## 24008

HOME HEALTH SERVICE, INC., Appellant v.
SOUTH CAROLINA TAX COMMISSION, Respondent.

(440 S.E. (2d) 375)

Supreme Court

*F. Truett Nettles, II,* Charleston, *for appellant.*

*Chief Deputy Atty. Gen. Ray N. Stevens* and *Deputy Atty. Gen. Ronald W. Urban,* Columbia, *for respondent.*

Heard Dec. 9, 1993; Decided Feb. 7, 1994.

Reh. Den. Mar. 2, 1994.

FINNEY, Justice:

Appellant is a non-profit corporation licensed to operate bingo games in South Carolina. During the operation of bingo, S.C. Tax Commission undercover agents observed a runner, an employee of the house, covering numbers for players temporarily excused from the floor. The respondent issued a citation and imposed a $1,000 fine against appellant for violating the Bingo Act by permitting its employees to substitute for players during their absence.

Appellant sought an injunction from the circuit court, but the request was denied. Prior to the hearing on the injunction, respondent again observed appellant using runners to fill in for players while they were temporarily excused. A second citation was issued and another fine was assessed against appellant. Appellant requested an administrative review. After a hearing, the Tax Commissioners concluded that appellant had violated the Bingo Act on each of the two occurrences. However, the Commissioners waived the penalty since appellant was rendering a service to players.

Appellant appealed this matter to the circuit court. The court found that the action was without foundation and affirmed the Commission's finding and order. This appeal follows.

Appellant has raised several issues on appeal. The critical issue is whether an employee of a bingo operator can temporarily sit in for a player during the player's absence from the game. Appellant's issues are addressed separately below.

The initial question is whether the house employee acted as an agent of the house or as an agent of the player while substituting for the player. S.C. Code Ann. § 12-21-3320(16) (Supp. 1989) provides that " '[p]layer' means one who participates in a game of bingo other than as an agent, promoter, or representative of the house."

Respondent interprets the statute to mean that an agent of the house cannot be a player. Respondent contends that S.C. Code Ann. § 12-21-3410(1), (4), and (5) (Supp. 1989) establishes that the player is the only one allowed to cover squares during the calling of a bingo game. In particular, section 12-21-3410(1) provides that "[b]ingo is played by more than one player and a caller who is associated with the house." Respondent asserts that this language implies there is a difference between the player and the house. This difference is confirmed, in respon-

dent's view, by the plain definition of player which excludes participation by an agent, promoter, or representative of the house.

Respondent contends that the house participates in the game when a house employee covers a square during a bingo game. Appellant asserts the employees were simply providing a courtesy and service to the patrons and were not "playing" the game. Furthermore, appellant argues that it has not violated any explicit provision of the Bingo Act because its employees are not gambling or playing bingo when substituting for absent players.

In construing a statute, the language used should be given its plain and ordinary meaning. *City of Columbia v. Moser,* 280 S.C. 134, 311 S.E. (2d) 920 (1983). The construction of a statute by an agency charged with its administration is entitled to the most respectful consideration and should not be overruled absent compelling reasons. *Emerson Electric Co. v. Wasson,* 287 S.C. 394, 339 S.E. (2d) 118 (1986).

In construing the definition of a player, the plain meaning shows that a player is someone other than an agent, promoter or representative of the house. Considering that the employee fills in briefly for the player as a service of the house, the employee is acting as an agent of the house. Such activity is prohibited by the statute. Accordingly, appellant violated the Bingo Act by permitting its employees to substitute for players.

Appellant argues that the definition section of S.C. Code Ann. § 12-21-3320 (Supp. 1989) is vague and overbroad as construed and applied by the Tax Commission and thus fails to provide notice of what constitutes a violation.

Bingo operators carry a substantial burden of establishing the unconstitutionality of the statute. *Army Navy Bingo v. Plowden,* 281 S.C. 226, 314 S.E. (2d) 339 (1984). "When the issue is the constitutionality of a statute, every presumption will be made in favor of its validity and no statute will be declared unconstitutional unless its invalidity appears so clearly as to leave no doubt that it conflicts with the constitution." *Gold v. South Carolina Board of Chiropractic Examiners,* 271 S.C. 74, 245 S.E. (2d) 117 (1978). Accordingly, the burden is on appellant to prove the unconstitutionality of the statute.

Appellant claims that the definition of player is unconstitutionally vague. However, on its face, the definition of a player is not so vague as to be unclear on who is considered a player. Thus, appellant's argument that it had no way of knowing that such activity of a runner would be deemed illegal is without merit. In our view, appellant has not met its substantial burden of establishing that the statute is unconstitutional.

Appellant contends that it had no warning that allowing runners to temporarily fill in for players would be considered illegal. In appellant's view, it did not have prior notice because the Tax Commission failed to publish the decision as a regulation in accordance with the Administrative Procedures Act (APA), S.C. Code Ann. §§ 1-23-130, 1-23-140 (1986).

The Tax Commission Bingo Research Committee and Deputy Chief Revenue Officer issued an internal memorandum in the form of questions and answers. The question whether runners could fill in for players was addressed. This activity was determined to be prohibited. The memo was not promulgated as a regulation, but was circulated among Tax Commission district offices. The circuit court found that this internal memorandum was neither a rule, order, nor decision within the intent and meaning of the APA.

The Tax Commission argues that the APA was not offended for two reasons. First, the challenged memorandum is not a rule or regulation and secondly, appellant had actual notice of the administrative position after the first offense.[1]

Whether a particular agency proceeding announces a rule or a general policy statement depends upon whether the agency action establishes a binding norm. *Ryder Truck Lines, Inc. v. United States*, 716 F. (2d) 1369 (1983). In our view, the document issued was similar to a policy statement as opposed to a binding norm given that the document was not issued by the commissioners and, thus, no final agency approval had been given. Therefore, we do not

---

[1] Respondent contends that the citation and subsequent administrative order constitute actual notice. However, this notice was given after the violation was identified by the commission. Thus, appellant did not have actual notice prior to the first offense.

find that the APA was violated in this instance. We caution respondent that when there is a close question whether a pronouncement is a policy statement or regulation, the commission should promulgate the ruling as a regulation in compliance with the APA.

Next, appellant asserts that the prosecution initiated pursuant to the internal memorandum violated the Tax Commission's own procedures, specifically, Revenue Procedures 87-1 and 87-3 (1989).[2] Under Revenue Procedure 87-1, a regulation is defined as a "permanent document used to state official department policy relating to the interpretation or administration of state tax laws and local tax laws to the extent of the commission's responsibility." Revenue Procedure 87-3 sets forth detail on when and how a regulation should be promulgated.

Respondent argues there is no requirement that the memorandum in question be issued as a revenue document. On the contrary, respondent asserts the Tax Commission's procedures do to prohibit audit personnel from developing guidelines for conducting examinations.

The circuit court found that Revenue Procedures 87-1 and 87-3 are not applicable here because the procedures relate to tax laws and not to the State's police power. The court stated that appellant was not charged with violating a tax statute but was found to have violated the Bingo statute.

While we agree with the conclusion, we disagree with the court's reasoning. This Court has stated that the bingo licensing scheme is part of our state's tax law. *Army Navy Bingo v. Plowden, supra.* Therefore, the revenue procedures would be applicable. However, the document in question was not required to be issued in the form of a revenue document.

Revenue Procedure 87-1 provides that "[r]evenue procedures generally detail the acceptable way of dealing with the administrative aspects of our tax laws. They *may* be issued to provide guidelines for making jeopardy assessments, assessing penalties, or establishing tax administration procedures."

---

[2] South Carolina Tax Commission Manual of Regulations, Opinions and Policy Documents, Revenue Procedures 87-1 and 87-3 (1989) (published in accordance with S.C. Code Ann. § 12-3-130 (1976).

Revenue Procedure 87-1(c)(1) (1989). (Emphasis added.) In viewing the procedures contemplated by the commission in its Revenue Procedure manual, we find that the issuance of guidelines is discretionary.

Finally, appellant argues that respondent was prohibited by the Taxpayer's Bill of Rights, S.C. Code Ann. § 12-54-810 (Supp. 1989), from carrying out unannounced covert investigations of bingo operations. The Taxpayer's Bill of Rights provides in pertinent part that "[a]n officer or employee of the commission . . . may not knowingly authorize, require, or conduct any investigation of, or surveillance over, any person for nontax administration related purposes." Section 12-54-810.

Appellant's prosecution was based upon evidence gained through investigations by undercover agents. Appellant asserts that such covert investigation of bingo operators is beyond the authority of the Tax Commission and thus appellant's judgment should be reversed.

Respondent asserts that the Taxpayer's Bill of Rights is not relevant when the Commission is statutorily directed under its police powers to regulate the method under which bingo is played. Furthermore, such enforcement requires the commission to conduct investigations to assure that illegal gambling is not occurring. The circuit court found that appellant's allegation that the Taxpayer's Bill of Rights was violated was without foundation. We agree.

The Taxpayer's Bill of Rights prohibits covert investigations for nontax administration related purposes. Clearly, since bingo licensing is part of our State's tax laws, the commission is authorized to conduct surveillance of bingo operations for tax purposes.

For the foregoing reasons, the judgment of the circuit court is AFFIRMED.

CHANDLER, C.J., TOAL and MOORE, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.