493 S.E.2d 871

Jackie Franklin DAVIS, Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF
PUBLIC SAFETY, Appellant.

No. 2740.

Court of Appeals of South Carolina.

Submitted Sept. 8, 1997.

Decided Oct. 21, 1997.

Rehearing Denied Dec. 17, 1997.

Frank L. Valenta, Jr., General Counsel, and Patrick M. Teague, Associate General Counsel, both of the South Carolina Department of Public Safety, Columbia, for appellant.

William H. Nicholson, III, of Nicholson & Anderson, Greenwood, for respondent.

STILWELL, Judge:

The South Carolina Department of Public Safety (Department) appeals from a circuit court order which determined that the plain meaning of the phrase "term of imprisonment" as used in the felony DUI statute [1] denotes "actual duration of the offender's incarceration."[2]  Department also appeals the trial court's ruling that multiple convictions arising out of a single violation (such as when more than one individual is harmed by the conduct) of the felony DUI statute result in only one three-year suspension of Davis's driver's license.  We affirm.[3]

## FACTS

On January 8, 1991, Davis pled guilty to two counts of felony DUI.  Both of these counts, on separate indictments, involved one accident, which caused injury to two separate people.  On each indictment, Davis was sentenced to five years, suspended on service of two years, a $5000 fine, and five years probation.  The fine and sentence on both indictments were concurrent.

Davis completed his sentence of imprisonment on January 16, 1992,[4] and began probation, with an expiration date of

1.  S.C.Code Ann. § 56–5–2945 (Supp.1996).

2.  This is one of four cases consolidated for our consideration by order of this court.  The other cases are: *Caraway v. South Carolina Dep't of Pub. Safety*, Op. No. 97–UP–553 (S.C.Ct.App. filed Oct. 21, 1997); *Thompson v. South Carolina Dep't of Pub. Safety*, Op. No. 97–UP–552 (S.C.Ct.App. filed Oct. 21, 1997); and *Williams v. South Carolina Dep't of Pub. Safety*, Op. No. 97–UP–554 (S.C.Ct.App. filed Oct. 21, 1997).

3.  We decide this case without oral argument pursuant to Rule 215, SCACR.

4.  Actually, Davis was incarcerated only eight months, from January 8, 1991 until August 1, 1991, when he was released on supervised fur-

January 15, 1997.  Davis sought an order compelling Department to lift its suspension following his service of imprisonment and the subsequent three-year suspension.  Department, however, contended the three years did not start running until the end of Davis's five-year sentence even though it was suspended.  Furthermore, Department suspended the license for two consecutive periods of three years for each indictment for a total of an eleven-year suspension.  The trial court determined that the three-year period of suspension ended on January 15, 1995, three years after Davis was released from imprisonment.  The court determined that Davis's driver's license should have been suspended for a maximum period of three years over the term of imprisonment because, even though two people were injured, Davis committed only one driving offense.

## LAW/DISCUSSION

### I.

Department contends that the legislative intent under the felony DUI statute was to suspend the driver's license of anyone convicted under the statute for *any* term of imprisonment which means *any* prison sentence given.  We disagree.

The statutory language at issue is as follows:

The department shall suspend the driver's license of any person who is convicted or who receives sentence upon a plea of guilty or nolo contendere pursuant to this section for a period to include *any term of imprisonment plus three years.*

S.C.Code Ann. § 56–5–2945(B) (Supp.1996) (emphasis added).

The construction of a statute by the agency charged with its administration will be accorded most respectful con-

---

lough which expired on January 16, 1992.  Davis does not argue that the three-year clock started running when he was released on furlough, but instead argues that it started when the furlough ended and probation began.  Therefore, we will not address whether the three-year period begins when released from prison and placed on furlough or whether supervised furlough is included within the phrase "term of imprisonment."  Placement of prisoners on furlough is not a part of the sentencing process, but rather a method to alleviate prison overcrowding.  *See Anders v. South Carolina Parole & Community Corrections Bd.,* 279 S.C. 206, 305 S.E.2d 229 (1983).

sideration and will not be overruled absent compelling reasons. *Home Health Serv., Inc. v. South Carolina Tax Comm'n,* 312 S.C. 324, 440 S.E.2d 375 (1994); *Jasper County Tax Assessor v. Westvaco Corp.,* 305 S.C. 346, 409 S.E.2d 333 (1991). Such compelling reasons exist, however, if the agency's construction of the statute is clearly erroneous. *Monroe v. Livingston,* 251 S.C. 214, 217, 161 S.E.2d 243, 244 (1968) (finding an agency's consistent construction of a statute "affords no basis for the perpetuation of a patently erroneous application of the statute").

■ We believe Department's interpretation of "term of imprisonment" as including a suspended sentence, probation, or parole is clearly erroneous.

■ When statutory terms are clear and unambiguous, there is no room for construction and the terms must be applied according to their literal meaning. *Carolina Power & Light Co. v. City of Bennettsville,* 314 S.C. 137, 442 S.E.2d 177 (1994). We believe the phrase "term of imprisonment" clearly and unambiguously refers to physical incarceration and, therefore, the subsequent three-year suspension should begin when a defendant is released from incarceration in a correctional institution or similar facility. *See State v. Wickenhauser,* 309 S.C. 377, 423 S.E.2d 344 (1992) (term "imprisonment" as used in S.C.Code Ann. § 56-5-2940(4) refers only to actual incarceration and not to any probationary period). Other jurisdictions have likewise determined that "term of imprisonment" as used in various statutes refers to actual physical confinement in jail. *E.g., State ex rel. Otterstetter v. McManus,* 309 Minn. 68, 243 N.W.2d 730 (1976) ("term of imprisonment" as used in Interstate Agreement on Detainers refers to physical confinement of the prisoner and not parole); *Commonwealth v. Kriston,* 527 Pa. 90, 588 A.2d 898, 899 (1991) (holding "plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative *institution,*" not electronic home monitoring) (emphasis in original). *But cf. State v. Rosado,* 131 N.J. 423, 621 A.2d 12, 14 (1993) ("[P]arole is the legal equivalent of imprisonment—a proposition that we adopt for purposes of computing credit for a 'term of imprisonment' in the context of this case.").

Because the phrase "term of imprisonment" is clear and unambiguous, discerning legislative intent is not necessary. *See Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 401, 175 S.E.2d 805, 817 (1970) ("If a statute is clear and explicit in its language, then there is no need to resort to statutory interpretation or legislative intent to determine its meaning."). In any event, we do not believe the legislature intended the phrase to refer to anything other than actual incarceration. In at least one other provision, the legislature's intention was clearly to the contrary. *Cf.* S.C.Code Ann. § 56–5–750(D) (Supp.1996) (If a driver fails to stop when signaled by law enforcement vehicle Department must revoke the driver's license for a period to include "any term of imprisonment, *suspended sentence, parole, or probation,* plus three years.") (emphasis added). Had the legislature intended a different result here, the language employed in § 56–5–2945 would have been similar, if not identical, to the language employed in § 56–5–750(D).

Department's reliance on Attorney General Opinion 92–56 and several cases cited therein is misplaced. Based in part on the cases *State v. Germany,* 216 S.C. 182, 57 S.E.2d 165 (1949); *Picklesimer v. State,* 254 S.C. 596, 176 S.E.2d 536 (1970); and *Mims v. State,* 273 S.C. 740, 259 S.E.2d 602 (1979), the Attorney General's Office advised Department that "there appears to be a basis in State case law for construing the term 'imprisonment' as used in Section 56–5–2945 to include time served as part of a suspended sentence or on parole or probation as well as time spent in physical incarceration." 1992 Op. S.C. Att'y Gen. 56. The opinion noted, however, that this construction was not free from doubt. *Id.* We believe these cases do not support Department's position.

In *Germany,* the defendant petitioned for habeas corpus, arguing he had been sentenced incorrectly for escaping a chain gang. Defendant's original sentence had been five years, provided that upon service of nine months the balance would be suspended and the defendant would be placed on parole. Defendant's sentence for escape was not to exceed his "original sentence," and he argued that "original sentence" referred only to the nine-month unsuspended portion of his sentence. The supreme court concluded otherwise and stated

that the suspended portion was an inseparable part of his sentence. *Germany,* 216 S.C. at 185, 57 S.E.2d at 166.

The supreme court employed a similar analysis in *Picklesimer,* where it interpreted the language "at least one third of the term for which he was sentenced to serve." *Picklesimer,* 254 S.C. at 599, 176 S.E.2d at 538; *see Mims,* 273 S.C. at 741– 42, 259 S.E.2d at 602 (applying a similar analysis in determining the impact of a defendant's "consecutive, suspended" sentence when computing parole eligibility).

· Because we are not called upon to determine the term to which Davis was sentenced, but rather only his term of imprisonment, the analysis in these cases is simply not applicable.

## II.

Department also appeals the trial court's ruling that multiple convictions under the DUI statute arising out of a single act should result in only one three-year suspension of Davis's driver's license and claims *Bay v. South Carolina Highway Department,* 266 S.C. 9, 221 S.E.2d 106 (1975), supports its contention that multiple convictions arising out of a single act result in separate and consecutive three-year suspensions. We disagree.

In *Bay,* the defendant received a five-year sentence for reckless homicide and a five-year sentence for leaving the scene of an accident, to run concurrently. *Id.* Each sentence carried a mandatory license suspension. The court held that, even though only one accident was involved, the suspensions should run consecutively. The court reasoned as follows:

The charge of leaving the scene after the accident involved *different conduct* from that upon which the charge of reckless homicide was based; and each suspension resulted from the conviction of a *different offense.* There is nothing to indicate that respondent is entitled to be rewarded by having the periods of license suspension run concurrently simply because he committed *two offenses* within a very short period of each other.

*Id.* at 14, 221 S.E.2d at 108 (emphasis added).

The facts in *Bay* are distinctly different from those in the present appeal in that here, Davis's multiple convictions are

not the result of committing different offenses. He committed only one offense, a violation of § 56–5–2945, which harmed more than one individual. The statute fails to provide for this situation. However, in light of the non-punitive purpose of this statute, which is to keep dangerous drivers off the road,[5] we do not believe the legislature intended to treat offenders differently depending upon how many people are killed or injured in a single accident. For this reason, we hold Davis's suspension will expire three years after his term of imprisonment.

For the foregoing reasons, the trial court order is

AFFIRMED.

HOWELL, C.J., and HEARN, J., concur.

---

**5.** *Parker v. State Highway Dep't,* 224 S.C. 263, 78 S.E.2d 382 (1953).