719 S.E.2d 650

EMERSON ELECTRIC CO., and Affiliates, Appellant,

v.

SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent.

No. 27073.

Supreme Court of South Carolina.

Heard Sept. 21, 2011.
Decided Dec. 12, 2011.

482

John C. von Lehe, Jr., and Bryson M. Geer, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Appellant.

Adam N. Marinelli, Sean G. Ryan, and Milton G. Kimpson, of the South Carolina Department of Revenue, of Columbia, for Respondent.

Justice KITTREDGE.

This is a direct appeal in a tax case from the Administrative Law Court (ALC). The ALC upheld the South Carolina Department of Revenue's (DOR) disallowance of certain expense deductions claimed by Appellant Emerson Electric Company (Emerson). We affirm.

## I.

Our standard of review is governed by the Administrative Procedures Act. S.C.Code Ann. § 1–23–380(5) (Supp.2010). The Court may affirm the ALC's decision, remand the matter, or reverse or modify it

if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority granted of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.*

## II.

Emerson raises two issues on appeal.

(1) Where South Carolina law provides that a non-resident corporation's dividend income is, in all cases, statutorily excluded from South Carolina taxable income, does South Carolina law further allocate the interest expenses related to those excluded dividends to the non-resident corporation's principal place of business?

(2) If South Carolina law does allocate the interest expenses related to the excluded dividends to the corporation's principal place of business, is the South Carolina income allocation statute constitutional as applied to Emerson?

## III.

Emerson is a publicly traded, Fortune 500 company engaged in worldwide manufacturing activities. Its principal place of business is near St. Louis, Missouri, but it conducts business worldwide, including in South Carolina. Emerson conducts much of its business through hundreds of foreign and domestic wholly-owned subsidiaries, from which Emerson receives dividends.

Emerson and its subsidiaries timely filed consolidated income tax returns for South Carolina in fiscal years 1999 through 2002. The periods at issue are tax years 1999, 2000, and 2001 (license tax years 2000, 2001, and 2002). In its initial returns, Emerson did not claim deductions for expenses related to its receipt of dividends from subsidiary corporations. Emerson later filed amended returns, claiming the deductions and seeking a refund.[1] Emerson's claimed entitlement to the deductions on its South Carolina returns is the question before the Court.

## A.

To understand Emerson's claim concerning the expense deductions, it is necessary to understand the income side of the ledger, together with South Carolina's "matching principle." Emerson properly excludes from its taxable income dividends received from its wholly-owned subsidiaries. This is so because, for both federal and South Carolina income tax

---

1. Emerson does not identify the precise source of the dividend income or the origin of the related expenses.

purposes, dividends received by a parent corporation from a wholly-owned subsidiary generally will not be subject to income tax. *See* I.R.C. § 243 (2006); S.C.Code Ann. § 12–6–40 (2000) (incorporating the Internal Revenue Code by reference); S.C.Code Ann. § 12–6–1110 (defining South Carolina taxable income by reference to federal taxable income). This is referred to as the "Dividends Received Deduction," (DRD) and the statute technically allows a one-hundred percent deduction against qualifying dividend income. The result is that such qualifying dividend income is not taxable. Here, it is stipulated that Emerson's claimed expenses are related to dividend income qualifying for the DRD. Thus, for the years in question, the DRD permitted Emerson to claim no taxable income for federal or South Carolina purposes as a result of the dividends it received from its wholly-owned subsidiaries.

■ Emerson argues the ALC erroneously determined that, pursuant to S.C.Code Ann. § 12–6–2220(2) (2000), certain expense deductions of Emerson must be allocated to its principal place of business (Missouri), and therefore Emerson could not use those deductions for South Carolina income tax purposes. We disagree.

A multistate corporation that conducts its business partly within South Carolina is subject to state income tax based on the portion of its business conducted in the state. *See* S.C.Code Ann. § 12–6–2210(B) (Supp.2010). The portion of a corporation's total income that is taxable in South Carolina is determined through a statutory scheme, which distinguishes between the business and non-business income of a multijurisdictional enterprise.

A corporation's *business income* is apportioned among the states in which it conducts business. South Carolina levies tax upon only the percentage of the taxpayer's total business which is conducted within the state. *See* S.C.Code Ann. § 12–6–2210(B) (2000); *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983) ("Under both the Due Process and the Commerce Clauses of the Constitution, a state may not, when imposing an income-based tax, tax value earned outside its borders.") (internal quotations omitted); *U.S. Steel Corp. v. S.C. Tax Comm'n*, 259 S.C. 153, 156, 191 S.E.2d 9, 10 (1972) ("The statutory policy is

designed to apportion to South Carolina a fraction of the taxpayer's total income reasonably attributable to its business activity in this State.").

In contrast, a multi-jurisdictional enterprise's *non-business income* is not apportioned among various states. Rather, non-business income is allocated to or deemed to be earned in a particular state depending on its form.[2] If non-business income is not allocated to South Carolina, both the income and related expenses are disregarded in the computation of South Carolina income tax. *See* S.C.Code Ann. §§ 12–6–2220 to –2230 (Supp.2010).

During the relevant time period, South Carolina's allocation statute provided:

> The following items of income must be *directly allocated* and *excluded* from the apportioned income and the apportionment factors:
>
> . . . .
>
> (2) Dividends received from corporate stocks owned, *less all related expenses*, are allocated to the state of the corporation's principal place of business. . . .

S.C.Code Ann. § 12–6–2220 (emphasis added).[3]

■ Regarding expense deductions, South Carolina follows the "matching principle." Succinctly stated, where income is taxable in South Carolina, the expenses incurred in generating that income may be matched against it as a deduction in South Carolina. *See Dalton v. S.C. Tax Comm'n*, 295 S.C. 174, 179, 367 S.E.2d 459, 462 (Ct.App.1988) ("The principle of matching income not taxable in South Carolina ... with the expenses that generated that non-taxable income is firmly established

---

2. Allocation formulas vary by state. In South Carolina, certain types of non-business income, such as interest income, are allocated on the basis of the corporation's principal place of business; however, other types of non-business income, such as gains or losses from the sale of real property, are allocated on the basis of situs. S.C.Code Ann. § 12–6–2220.

3. This subsection was amended effective June 7, 2005, to state, "Dividends received from corporate stocks *not connected with the taxpayer's business*, less all related expenses, are allocated to the state of the corporation's principal place of business." S.C.Code Ann. § 12–6–2220(2) (Supp.2010) (emphasis added).

as the law in South Carolina."). Conversely, where income is not taxable in South Carolina, as is the case here, the expenses incurred in generating that income may not be matched against it as a deduction in South Carolina.

As concerns the construction of section 12–6–2220(2), although we granted Emerson's motion to argue against precedent, we adhere to *Avco Corp. v. Wasson*, 267 S.C. 581, 230 S.E.2d 614 (1976).[4] *Avco* construed the predecessor to section 12–6–2220 to require that if dividend income was allocated out-of-state, the expenses related to that allocable dividend income must also be allocated out-of-state. For purposes of applying this statute, we reject Emerson's contention that allocation of related expenses is triggered only in the presence of taxable income from the receipt of a dividend. *Avco* spoke to the issue of allocation of related expense where no dividend was received: "Although [section 12–6–2220(2) ] refers to the allocation of 'Dividends received ..., less all related expenses,' the actual receipt of a dividend from each stock purchased is not required before the interest expenses ... are to be allocated." *Id.* at 586, 230 S.E.2d at 616.

*Avco* properly construes section 12–6–2220(2).[5] Accordingly, we find *Avco* supports DOR's determination to allocate Emerson's related expenses to its principal place of business,

4. Having carefully reviewed *Avco*, we adhere to its construction of legislative intent concerning the predecessor to section 12–6–2220(2). Application of the plain meaning of section 12–6–2220(2) requires that Emerson's claimed expenses be allocated to the state of its principal place of business.

5. We further note that, in light of the constitutional prohibition against a state taxing income that lacks a sufficient nexus with the state, taxation of certain non-business income may, in some instances, be unconstitutional. *See Container Corp.*, 463 U.S. at 165–66, 103 S.Ct. 2933 ("The Due Process and Commerce Clauses of the Constitution do not allow a State to tax income arising out of interstate activities—even on a proportional basis—unless there is a 'minimal connection' or 'nexus' between the interstate activities and the taxing State, and 'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.' "). This observation is made in light of Emerson's failure to identify the precise source of the dividend income or the origin of the related expenses. We are left to speculate whether these dividends or related expenses have any nexus to South Carolina.

Missouri. We turn now to Emerson's constitutional challenge to section 12–6–2220(2).

## B.

 Emerson argues in the alternative that section 12–6–2220(2), as applied, discriminates against non-resident taxpayers in violation of the Commerce Clause of the United States Constitution.[6] We disagree and reject Emerson's premise that a disparate tax effect on two geographically diverse taxpayers, viewed only in the context of one taxpayer's geographic domicile, constitutes unconstitutional discrimination. The constitutional challenge to section 12–6–2220(2) is made only because Emerson was not allowed the interest expense deductions in its home state of Missouri—a feature of Missouri law over which we have no control.[7] We reject the implication

---

6. Emerson also argues section 12–6–2220 violates the Equal Protection Clauses of the Fourteenth Amendment and the South Carolina Constitution and the Privileges and Immunities Clause of the South Carolina Constitution. However, those claims are not properly preserved for review by this Court, and we do not address them. *See* Rule 208(b)(1), SCACR ("The brief of appellant shall contain ... the particular issue to be addressed ... followed by discussion and citations of authority."); *Travelscape, LLC v. S.C. Dep't of Rev.*, 391 S.C. 89, 108–10, 705 S.E.2d 28, 38–39 (2011) (holding that issue preservation requirements are applicable in the context of Commerce Clause challenges to state tax laws); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding that where an appellant fails to provide arguments or supporting authority for his assertion, he is deemed to have abandoned the issue); *Spivey v. Carolina Crawler*, 367 S.C. 154, 161, 624 S.E.2d 435, 438 (Ct.App.2005) (declining to consider issues not raised in appellant's initial brief because the reply brief may not be used to argue issues not raised in the initial brief).

7. At the ALC hearing, an employee of Emerson testified that Missouri's allocation and apportionment scheme operates differently from South Carolina's and Emerson is not permitted to deduct the expenses in question from its Missouri income. Any differing tax consequences are merely a result of different apportionment and allocation schemes used by South Carolina and Missouri. *See Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 278–79, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (acknowledging that variation in state income tax consequences for multi-state corporations does not inhere in a particular state's formula but instead is a product of the combination of different formulas). The constitutionality of a South Carolina statute does not hinge upon whether another state allows or disallows a tax deduction.

that the constitutionality of one state's allocation statute turns on the allowance of certain deductions in another state.

■■ "When the issue is the constitutionality of a statute, every presumption will be made in favor of its validity and no statute will be declared unconstitutional unless its invalidity appears so clearly as to leave no doubt that it conflicts with the constitution." *Home Health Serv., Inc. v. S.C. Tax Comm'n,* 312 S.C. 324, 327, 440 S.E.2d 375, 377 (1994). "Accordingly, the burden is on the appellant to prove the unconstitutionality of the statute." *Id.* Emerson has not met that burden.

The record reveals Emerson availed itself of these same deductions numerous times against its taxable income in various other taxing jurisdictions.[8] We further point out that Emerson does not contend its nontaxable dividend income has any nexus with this state. Emerson neither claims section 12–6–2220 provides a direct commercial advantage to local businesses, nor contends that application of section 12–6–2220 results in any discrimination where a corporation's dividend income is taxable.[9] Rather, Emerson objects only to the application of section 12–6–2220 to deny interest deductions related to dividends that are not taxable in South Carolina because such an application results in disparate treatment of taxpayers based solely on residence.

■ The ALC correctly noted that section 12–6–2220 is an allocation statute, not a taxing statute. The United States Supreme Court has never found allocation itself unconstitutional. While allocation provisions are not immune from a successful Commerce Clause challenge, by nature allocation rules necessarily result in income and expenses being assigned to different geographic locations for similarly situated taxpayers. *See* 2 Richard D. Pomp & Oliver Oldman, *State & Local Taxation* 10–26 to –29 (5th ed.2005). The Commerce Clause

---

8. Emerson claimed these same expense deductions in other states. Some states, like South Carolina, denied the deductions altogether, some allowed Emerson to deduct only a portion of the expenses, and other states permitted 100% of the expense deductions.

9. Emerson concedes that, in the presence of *taxable* dividend income, application of section 12–6–2220 does not discriminate against interstate commerce.

does not require any particular method of allocation or apportionment, nor does it prohibit variety in methods among states. *See Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 278 n. 12, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (describing disparate tax burdens alleged to be discriminatory as "simply a way of describing the potential consequences of the use of different formulas by [various] States"). Moreover, we find *Shaffer v. Carter* instructive. 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920). The United States Supreme Court in *Shaffer* upheld Oklahoma's denial of deductions for out-of-state losses to nonresidents who were subject to Oklahoma's tax on in-state income. In rejecting the claim that Oklahoma's income tax act was discriminatory, the Supreme Court stated:

> The difference [between residents and non-residents], however, is only such as arises naturally from the extent of the jurisdiction of the state in the two classes of cases, and cannot be regarded as unfriendly or unreasonable discrimination. As to residents it may, and does, exert its taxing power over their income from all sources, whether within or without the state, and it accords to them a corresponding privilege of deducting their losses, wherever those accrue. As to nonresidents, the jurisdiction extends only to their property owned within the state and their business, trade, or profession carried on therein, and the tax is only on such income as is derived from those sources. Hence there is no obligation to accord to them a deduction by reason of losses elsewhere incurred.

*Id.* at 57, 40 S.Ct. 221. *See Lunding v. N.Y. Tax Appeals Tribunal,* 522 U.S. 287, 298–99, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998) (affirming *Shaffer*'s holding that a State may limit the deductions of non-residents to those related to the production of in-state income).[10]

---

**10.** We acknowledge that *Shaffer* and *Lunding* involved challenges under the Privileges and Immunities Clause; however, in the context of a discrimination claim, the United States Supreme Court has spoken of the "mutually reinforcing relationship between the Privileges and Immunities Clause of Art. IV, § 2, and the Commerce Clause—a relationship that stems from their common origin in the Fourth Article of the Articles of Confederation and their shared vision of federalism." *Hicklin v. Orbeck,* 437 U.S. 518, 531–32, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (relying on Commerce Clause decisions as support in the context of a Privileges and Immunities challenge).

South Carolina's allocation scheme generally, and section 12–6–2220 specifically, is internally consistent. The internal consistency is readily apparent when South Carolina's "matching principle" is considered, as discussed above. To adopt Emerson's position would be to reject South Carolina's even-handed approach to apportionment and allocation of matching income and expenses. The allegedly disparate results complained of by Emerson do not demonstrate unconstitutional discrimination. We are persuaded that section 12–6–2220(2) satisfies the requirements of *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) (holding that a state tax does not violate the Commerce Clause if it is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the state). *See also Lung v. O'Chesky,* 94 N.M. 802, 804, 617 P.2d 1317, 1319 (1980) ("If the state has no jurisdiction to tax the income from a particular source, there is no reason for it to extend exemptions and deductions to a non-resident based on that income.").

In sum, any disparate tax consequences, which Emerson has failed to prove, are not a result of the application of section 12–6–2220 but rather are the product of the laws of Missouri, over which we have no control. Therefore, the ALC properly found Emerson failed to carry its burden of proving that the application of section 12–6–2220 violates the Commerce Clause.

## IV.

We affirm the ALC and find that section 12–6–2220 applies. DOR properly disallowed Emerson's related expense deductions. Emerson's related expense deductions were properly allocated to the state of its principal place of business, Missouri. We further find the matching principle requires that, where categories of income are directly allocated, related expenses must also be allocated. Finally, we find section 12–6–2220 does not discriminate against interstate commerce and thus does not violate the Commerce Clause.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.