# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Fairfield Waverly, LLC, Respondent,

v.

Dorchester County Assessor, Appellant.

GS Windsor Club, LLC, Respondent,

v.

Dorchester County Assessor, Appellant.

Appellate Case No. 2017-000569

―――――――――

Appeal From The Administrative Law Court
S. Phillip Lenski, Administrative Law Judge

―――――――――

Opinion No. 5769
Heard February 11, 2020 – Filed August 26, 2020
Withdrawn, Substituted, and Refiled December 23, 2020

―――――――――

**AFFIRMED**

―――――――――

Andrew T. Shepherd, of Hart Hyland Shepherd, LLC, of
Summerville, and John G. Frampton, of St. George, both
for Appellant.

Burnet Rhett Maybank, III, and James Peter Rourke, both
of Nexsen Pruet, LLC, of Columbia, for Respondents.

―――――――――

**HEWITT, J.:** This case concerns section 12-37-3135 of the South Carolina Code (2014). That statute allows a twenty-five percent property tax exemption when there is an "Assessable Transfer of Interest" of certain types of real property.

The issue in this case is one of timing. In simple terms, the question presented is whether a property owner must claim this exemption during the first year of eligibility or whether there is a longer period.

The Administrative Law Court (ALC) took the latter view and found these taxpayers properly claimed the exemption. This result follows the best reading of the statute's language, particularly when the statute is read with an eye on what actually happens when an assessable transfer of interest occurs. We affirm.

## BACKGROUND

This appeal includes two cases that were consolidated at the ALC. The parties stipulated the facts of both cases. Fairfield Waverly, LLC, and GS Windsor Club, LLC, (collectively, "Taxpayers") purchased property in Dorchester County during the closing months of 2012.

Neither taxpayer claimed the ATI Exemption in 2013. When Taxpayers did claim the exemption in January of 2014, the Dorchester County Assessor ("the Assessor") denied the requests. Taxpayers appealed to the ALC, and the ALC ruled in their favor. The Assessor appealed the ALC's decision to this court.

## ISSUE ON APPEAL

Did the ALC err in finding the Taxpayers were eligible to claim the ATI Exemption?

## STANDARD OF REVIEW

The applicable standard of review comes from the Administrative Procedures Act. *See* S.C. Code Ann. § 1-23-610 (Supp. 2019). Our review is confined to the record, and we may affirm, reverse, or remand if the ALC's decision is defective in any of certain particulars. *See* § 1-23-610(B). We need not list those particulars here because this case turns on an examination of statutory language. We review that issue de novo. *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

**ANALYSIS**

Section 12-37-3135 creates the ATI Exemption. Subsection (A) defines five terms of art:

> (1) "ATI fair market value" means the fair market value of a parcel of real property and any improvements thereon as determined by appraisal at the time the parcel last underwent an assessable transfer of interest.
>
> (2) "Current fair market value" means the fair market value of a parcel of real property as reflected on the books of the property tax assessor for the current property tax year.
>
> (3) "Exemption value" means the ATI fair market value when reduced by the exemption allowed by this section.
>
> (4) "Fair market value" means the fair market value of a parcel of real property and any improvements thereon as determined by the property tax assessor by an initial appraisal, by an appraisal at the time the parcel undergoes an assessable transfer of interest, and as periodically reappraised pursuant to Section 12-43-217.
>
> (5) "Property tax value" means fair market value as it may be adjusted downward to reflect the limit imposed pursuant to Section 12-37-3140(B).

§ 12-37-3135(A). Subsection (B)(1) establishes the exemption itself:

> When a parcel of real property and any improvements thereon subject to the six percent assessment ratio provided pursuant to Section 12-43-220(e) and which is currently subject to property tax undergoes an assessable transfer of interest after 2010, there is allowed an exemption from property tax of an amount of the ATI fair market value of the parcel as determined in the manner provided in item (2) of this subsection. Calculation of property tax value for such parcels is

based on exemption value. The exemption allowed by this section applies at the time the ATI fair market value first applies.

§ 12-37-3135(B)(1). Subsection (B)(2) sets the exemption's amount and gives two limitations:

(a) The exemption allowed by this section is an amount equal to twenty-five percent of ATI fair market value of the parcel. However, no exemption value calculated pursuant to this section may be less than current fair market value of the parcel.

(b) If the ATI fair market value of the parcel is less than the current fair market value, the exemption otherwise allowed pursuant to this section does not apply and the ATI fair market value applies as provided pursuant to Section 12-37-3140(A)(1)(b).

§ 12-37-3135(B)(2). These limitations operate to establish the "current fair market value"—in laymen's terms, the pre-sale fair market value—as the "floor" for property tax purposes.

Subsection (C) requires a notification procedure for the exemption:

The exemption allowed in this section does not apply unless the owner of the property, or the owner's agent, notifies the county assessor that the property will be subject to the six percent assessment ratio provided pursuant to Section 12-43-220(e) before January thirty-first for the tax year for which the owner first claims eligibility for the exemption. No further notifications are necessary from the current owner while the property remains subject to the six percent assessment ratio.

§ 12-37-3135(C).

A different statute provides that "once every fifth year each county or the State shall appraise and equalize those properties under its jurisdiction." S.C. Code Ann.

§ 12-43-217(A) (2014). "[T]he county or State shall implement the program and assess all property on the newly appraised values." *Id.*

Here, and below, the parties' arguments center on section 12-37-3135's language. Though we look at the whole statute when considering how it operates, the parts directly at issue in this case are the definitions in subsection (A) of "ATI fair market value" and "current fair market value," as well as subsection (C) which says the exemption does not apply unless the county is given notice "before January thirty-first for the tax year for which the owner first claims eligibility for the exemption." § 12-37-3135(C).

Taxpayers claim section 12-37-3135's plain meaning allows them to choose when to claim the ATI Exemption. They argue the words "first claims" in subsection (C) shows the legislature contemplated some property owners might not claim the ATI Exemption immediately. To the same end, Taxpayers point out that the statute does not affirmatively direct or require property owners to claim the ATI Exemption the first year they are eligible to do so.

The Assessor contends any delay in claiming the exemption causes problems with the statutory definitions. The Assessor's basic argument relies on the fact that a property's "current" fair market value changes over time. Specifically, the Assessor argues that when a taxpayer delays in claiming the ATI Exemption, the delay causes the "ATI fair market value"—the appraised price after the property changed hands—to often become the same (or nearly the same) as the property's "Current fair market value." This happens because property is reappraised when an assessable transfer of interest occurs. In the Assessor's view, this necessarily triggers subsection (B)(2)'s statutory "floor" that the property's exemption value may not be less than its "current fair market value."

In other words, the Assessor argues a delay in claiming the exemption is not necessarily forbidden. A delay simply means the exemption will have no practical benefit because two of the statute's key terms—"ATI fair market value" and "current fair market value"—end up being the same number and because that number is the floor below which the exemption may not go.

There are two reasons we find the Taxpayers properly claimed the ATI Exemption. First, we find section 12-37-3135's language envisions a taxpayer might not claim the ATI Exemption immediately. As noted above, subsection (C) explains that the ATI Exemption does not apply unless the county has notice "before January thirty-first for the tax year for which the owner first claims eligibility for the

exemption."  § 12-37-3135(C).  That language implicitly, if not directly, acknowledges an owner might not claim the exemption immediately.  It plainly is not an affirmative requirement that a property owner claim the ATI Exemption during the first year of eligibility.

Section 12-37-3135(B)(1) supports this reading as well.  That subsection explains the ATI Exemption "applies at the time the ATI fair market value first applies." This suggests the legislature intended the ATI Exemption's value to be set and established at the time the assessable transfer of interest occurs.  *See Beaufort Cty. v. S.C. State Election Comm'n*, 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011) ("The primary rule of statutory construction is to ascertain and give effect to the intent of the General Assembly.").

Second, we note that this statute is one of several property tax statutes.  We do not look at statutes in isolation.  Instead, we consider how the statutes operate with each other when striving to arrive at any one statute's proper meaning.  *See S.C. State Ports Auth. v. Jasper Cty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006) ("In construing statutory language, the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect."); *Duke Energy Corp. v. S.C. Dep't of Revenue*, 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016) ("[T]he [c]ourt should not concentrate on isolated phrases within the statute, but rather, read the statute as a whole and in a manner consonant and in harmony with its purpose.").

All taxpayers are liable for property taxes based on the property they own as of December 31 of the preceding year.  *See* S.C. Code Ann. § 12-37-610 (2014).  The tax bills for a given year do not go out until September of that year.  *See* S.C. Code Ann. § 12-45-70(A) (2014).  The bills for the "current" tax year are not due until the following January.  *Id.*

There is also a statutory requirement that property be reappraised when it is sold. The legislature enacted that statute, often referred to in common parlance as "point of sale," in 2006.  *See* S.C. Code Ann. § 12-37-3150 (2014).  The county has to give the new property owner notice of a reappraisal by July 1 or as soon thereafter as practical.  *See* S.C. Code Ann. § 12-60-2510 (2014).  Related statutes explain the procedures for a property owner to contest the reappraised value.  *See, e.g.,* S.C. Code Ann. § 12-60-2520 to -2540 (2014).

These features of the law—that tax liability for the current year looks backwards, that taxes are not billed until late in the "current" year or due until the next year,

and that the reappraisal process following an assessable transfer of interest does not happen instantaneously—cannot help but inform our analysis on the ATI Exemption. To illustrate this, consider the position of someone who buys property after the month of January in a given year. We use January because January 31 is the key date for claiming the ATI Exemption in section 12-37-3135(C).

The person who buys property after January must have until January 31 of the following year to claim the ATI Exemption. To conclude otherwise would make the statute meaningless. By that time, however, the law envisions the property will have been reappraised.

This matters because it shows that even by the first January following the sale, the property's "current" fair market value will actually be the property's new and reappraised value. This illustrates the definitional parts of the ATI Exemption cannot change over time as the Assessor argues. Doing so would cause the ATI Exemption to "collapse" on itself the same way the Assessor argues it "collapses" for Taxpayers here.

Now consider the situation when, as here, an assessable transfer occurs later in the year. GS Windsor Club bought its property in November of 2012. Fairfield Waverly bought its property that December. Both taxpayers were going to be statutorily liable for the 2013 property taxes because they owned the property as of December 31, 2012. We do not know whether the reappraisal process would occur by the end of 2012, but we doubt it. Neither taxpayer would receive their first tax bill until September of 2013. That bill would be due in January of 2014.

The Assessor contends that even by the receipt of the first tax bill in September of 2013, Taxpayers already lost the ability to claim the ATI Exemption because they did not do so by the previous January, almost immediately after both sales occurred. We believe a construction that bars Taxpayers in this situation from claiming the exemption would create a disorderly process rather than an orderly one. We cannot conceive of a reason why one set of purchasers—those who purchase property early in the year—would be afforded two tax years to claim the ATI Exemption and a flexible reading of the word "current" while a second group—those who purchase later in the year—would have not even a year (here, less than two months) to make the same election and would have a literal reading of the word "current" pressed upon them.

Precedent explains the ultimate goal in statutory interpretation is to give effect to the statute's intent. *See Denman v. City of Columbia*, 387 S.C. 131, 138, 691

S.E.2d 465, 468 (2010).  Section 12-37-3135's basic purpose is to provide property owners relief from the potentially burdensome increase in tax liability caused by an assessable transfer of interest and the subsequent reappraisal.  We believe the legislature intended all purchasers would have a meaningful opportunity to claim the ATI Exemption.  Accordingly, we find the legislature articulated that intent in tying the exemption's application to notice by January 31 of "the tax year for which the owner first claims eligibility."  § 12-37-3135(C).

In their brief and at oral argument, the Taxpayers contended this interpretation of the statute would allow property owners to claim the ATI Exemption several years, or even decades, after the assessable transfer of interest occurs.  We disagree.

Allowing property owners to claim the ATI Exemption for decades would defeat the legislature's intent of providing counties with a uniform mechanism of reappraising properties to determine their fair market values and assessing taxes accordingly.  *See S.C. State Ports Auth.*, 368 S.C. at 398, 629 S.E.2d at 629 ("In construing statutory language, the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect."); *Duke Energy Corp.*, 415 S.C. at 355, 782 S.E.2d at 592 ("[T]he [c]ourt should not concentrate on isolated phrases within the statute, but rather, read the statute as a whole and in a manner consonant and in harmony with its purpose.").

This result follows from two principles.  First, the legislature intended all purchasers would have a meaningful opportunity to claim the ATI Exemption.  As we have explained, the statute's text and evident purpose support this.

Second, we must read multiple statutes dealing with the same subject matter so that they work together as long as it is possible to do so.  This is true generally, and the South Carolina Real Property Valuation Reform Act explicitly tells us that its provisions are meant to complement other valuation statutes and that the Reform Act gets priority if a conflict exists.  S.C. Code Ann. § 12-37-3120 (2014); *see also Charleston County Assessor v. University Ventures*, 427 S.C. 273, 290–91, 831 S.E.2d 412, 421 (2019).  The ATI Exemption is a part of that act.

We are convinced there is no conflict between the ATI Exemption, the five-year reassessment statute, and other statutes in this area.  Section 12-60-2510(A)(1) mandates that written notice of a five-year reassessment be sent to taxpayers by October 1 of the year the reassessment is being implemented.  Receiving the five-year reassessment notice triggers the South Carolina Revenue Procedures Act.  *See*

S.C. Code Ann. §§ 12-60-10 to -3390 (2014 and Supp. 2019).  That act explains a taxpayer wishing to lodge an objection to the reassessment must do so within ninety days.  *See* § 12-60-2510(A)(3).  The ATI Exemption requires a taxpayer to claim the exemption by providing notice before January 31.  *See* § 12-37-3135(C) (2014).

The natural result of reading these statutes together is that a taxpayer who purchases qualifying property before an implementation year may claim the ATI Exemption by January 31 of the implementation year or may also use the appeal procedure in the Revenue Procedures Act.  This ensures such a taxpayer will have a meaningful opportunity to claim the ATI Exemption and honors the legislature's intent that there be a uniform procedure for reassessing property.

The reassessment process has no effect on a taxpayer purchasing property during an implementation year.  As already noted, property tax liability looks backwards to December 31 of the previous year.  Someone purchasing property during an implementation year would not receive the first property tax bill until the following year.  That taxpayer is entitled to claim the ATI Exemption, but may not wait until after the next five-year reassessment.

**CONCLUSION**

For the foregoing reasons, the ALC's judgment in Taxpayers' favor is

**AFFIRMED.**

**LOCKEMY, C.J., and GEATHERS, J., concur.**