# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Portfolio Recovery Associates, LLC Assignee of Synchrony Bank/HH Gregg, Respondent,

v.

Jennifer Campney, Defendant,

and

Jennifer Campney, Third-party Plaintiff,

v.

Cooling & Winter, LLC, Third-party Defendant,

of whom Jennifer Campney is the Appellant.

Appellate Case No. 2020-000935

———————

Appeal From Dorchester County
Diane Schafer Goodstein, Circuit Court Judge

———————

Opinion No. 6019
Heard May 1, 2023 – Filed August 23, 2023

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

John R. Cantrell, Jr., of Cantrell Legal, PC, of St. Matthews, for Appellant.

Jesse Ronald Jones, Jr., of Smith Debman Narron Drake

Saintsing & Myers LLP, of Charleston; and Caren D. Enloe, of Raleigh, North Carolina, both for Respondent.

Carolyn Grube Lybarker and Kelly Hunter Rainsford, both of South Carolina Department of Consumer Affairs, of Columbia, for Amicus Curiae South Carolina Department of Consumer Affairs.

---

**LOCKEMY, A.J.:**  Jennifer Campney appeals an order from the trial court granting judgment in favor of Portfolio Recovery Associates, LLC (PRA) and Cooling & Winter, LLC (Cooling & Winter).  On appeal, Campney argues the trial court erred by (1) ruling she was liable to PRA in the amount of $4,236.78, plus costs, under an account stated cause of action; (2) ruling that PRA and was not liable to her on her counterclaims; and (3) denying her motion pursuant to Rules 52 and 59(e), SCRCP.  We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

In January 2017, PRA filed a complaint against Campney.  PRA asserted it was an assignee of "Synchrony Bank/HH Gregg," which extended credit to Campney, and she failed to make the required payments on the credit account.  It alleged Campney owed $4,236.78 and she and PRA "either expressly or impliedly agreed that the statement or statements were true and was due to be paid then or at some other specified time."  The complaint included an affidavit and itemization of accounts stating Campney owed a principal amount of $4,236.78 and $80 in costs.  It also included a credit statement from Synchrony Bank, a charge-off[1] statement, and evidence of assignment.  Campney filed a pro se answer, denying the allegations of the complaint and stating she never agreed she owed any amount to PRA.  In August 2017, the magistrate court granted PRA's motion for summary judgment.  Campney appealed to the circuit court, which reversed the magistrate court's grant of summary judgment and remanded.

After remand, Campney filed her first amended answer and counterclaims.  In addition to admissions, denials, and various defenses, she alleged the consumer credit card transaction at issue was a consumer loan and PRA failed to send her the

---

[1] To "charge off" a loan means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely."  *Charge Off*, *Black's Law Dictionary* (11th ed. 2019).

required notice of right to cure. Campney raised four counterclaims against PRA and Cooling & Winter. The case was transferred to the Dorchester County Court of Common Pleas due to the amount in controversy and relief requested in the counterclaim.

On October 23, 2019, a one-day bench trial was held. Larry Andrews, the custodian of records for PRA, testified he had been employed with PRA for seventeen years, having been the custodian of records for eight years, and had previously worked for Synchrony Bank as a collector for four years.[2] He stated that while at Synchrony Bank, he received interdepartmental training and his duties included processing and updating information pertaining to accounts with outstanding credit balances. According to Andrews, his duties as custodian of records at PRA included reviewing complaints, affidavits, and documents in PRA's system to verify information. When PRA inquired if Andrews was familiar with the process PRA implemented to purchase charged-off consumer accounts, Campney objected, stating Andrews lacked the personal knowledge of the sales process. The trial court overruled the objection, allowed PRA to lay an additional foundation, and noted Andrews had been trained in various departments. Andrews testified he received annual training at PRA regarding acquisitions and the Fair Debt Collection Practices Act (FDCPA). Campney again objected, arguing the training Andrew received only provided information as to the functions of various PRA departments and he had no personal knowledge in regards to her alleged consumer account; the trial court overruled the objection.

Andrews testified his job duties required him to become familiar with certain accounts and he was familiar with Campney's account. He stated plaintiff's exhibit one was a bill of sale between PRA and Synchrony Bank and plaintiff's exhibit two was a load data of account in the pool PRA purchased from Synchrony Bank. Andrews testified that Synchrony Bank produced the bill of sale and provided it to PRA and the load data of account was information regarding Campney's specific charged-off account. When asked if the bill of sale and the load data of account were documents kept in the regular course of business and prepared near the time of the recorded event, by someone with knowledge or information transmitted, Andrews answered affirmatively. The court admitted the bill of sale and the load data of account into evidence over Campney's relevance, hearsay, authentication, incompleteness, and summary requirement objections. Andrews testified plaintiff's exhibit three was credit statements produced by Synchrony Bank, in the regular course of business, and sent to Campney. The trial court admitted the credit card

---

[2] Andrews testified that prior to 2014, Synchrony Bank was known as GE Capital.

statements over Campney's objections. In regards to the credit statements, Andrews stated they were addressed to "Jennifer M. Campney" and mailed to the address listed, in Summerville, and detailed purchases and payments made and amounts due. According to Andrews, the amount due, based on the billing statement dated April 23, 2015, was $4,236.78.

On cross-examination, Andrews stated the delinquent account with Synchrony Bank was opened sometime in 2012. He acknowledged that at the time the account was opened and subsequently charged off, he was not employed with Synchrony Bank and he would not have had knowledge of Synchrony Bank policies and procedures regarding Campney's account prior to PRA's purchase of accounts. Andrews further admitted that he had no experience in creating (1) bills of sale at PRA or Synchrony Bank; (2) credit statements during his time at Synchrony Bank; or (3) load data of account. When asked if he was familiar as to how Synchrony Bank would have stored the bill of sale or the load data of account in its system, Andrews stated he was not familiar. Andrews testified Synchrony Bank created the codes on the load data of account before PRA acquired the account and he was unable to testify to what the codes represented. According to Andrews, his knowledge regarding the load data of account came from the document being in PRA's system. When asked if he was aware of any additional credit statements after the statement dated April 25, 2015, Andrews testified he could not recall because he did not have the account files "in front of [him]." Additionally, when Campney inquired as to whether he had personal knowledge or was aware if Synchrony Bank mailed the April 25, 2015 credit statement to her, Andrews initially responded that federal regulations required credit statement be mailed to accountholders but subsequently acknowledged he did not have personal knowledge and was not aware if the statement was mailed.

At the close of PRA's evidence, Campney made a motion for an involuntary nonsuit pursuant to Rule 41(b) of the South Carolina Rules of Civil Procedure. First, she asserted the evidence provided by PRA did not establish Synchrony Bank properly assigned any debt to PRA because the bill of sale was void of any information regarding her account. Second, she argued that under PRA's account stated theory, it was required to present the delinquent account to her, and Andrews could not testify if it was mailed. Third, Campney contended PRA failed to produce any agreement to which she agreed to repay $4,236.78. Fourth, in regards to whether any voluntary payments on the account amounted to acknowledging the amount owed, Campney argued PRA failed to establish she was the individual who made payments on the account prior to the account being charged off.

PRA argued Andrews testified federal regulations required Synchrony Bank to mail account statements to accountholders and he further stated it was Synchrony Bank's standard practice to mail account statements. It contended these provided enough support to show Synchrony Bank mailed the statements to Campney and further noted Campney did not dispute the amounts due when Synchrony Bank had mailed the statements. Next, PRA asserted there was an agreement between Synchrony Bank and Campney and PRA was Synchrony Bank's assignee. The trial court denied Campney's motion for an involuntary nonsuit because it found the evidence supported each element required for an account stated cause of action.

On direct examination, Campney testified (1) she experienced emotional distress as a result of the lawsuit, (2) she had to take time off from work and had to travel for this case, and (3) she hired counsel. On cross-examination, Campney testified she believed she received the credit statements at the address listed on the statements. On redirect, she stated she could not recall if she received the statements that were admitted into evidence.

After the close of evidence, PRA moved for a directed verdict. First, PRA argued it met its burden because (1) Andrews testified that pursuant to Synchrony Bank's procedure, credit statements were mailed to Campney and she could not state she did not receive the statements and (2) Andrews testified the amount owed on the account was $4,236.78. Second, PRA maintained it had no obligation to notify Campney regarding the right to cure because that obligation was only required of the original creditor, Synchrony Bank. Third, in regards to Campney's counterclaims that the differing amounts on the affidavit and itemization of accounts versus the evidence PRA presented amounted to misleading and false statements, PRA contended there were adjustments on the account before this lawsuit was filed, resulting in differing amounts. PRA also asserted that any issues arising from letters sent to Campney, requiring differing amounts of debt, were outside of the South Carolina Consumer Protection Code's (the SCCPC's)[3] three-year and the Fair Debt Collection Practices Act's (the FDCPA's)[4] one-year respective statutes of limitations.

In response, Campney argued letters PRA sent to her claimed she owed $4,274.78 as of October 7, 2015, but the complaint alleged she owed $4,236.78. She asserted, given the differing amounts, the letters were false and misleading under the SCCPC and the FDCPA. Further, Campney asserted PRA admitted in the

---

[3] S.C. Code Ann. §§ 37-1-101 to 37-30-175 (2015 & Supp. 2022).
[4] 15 U.S.C. § 1692k(d).

requests for admissions that the credit transactions at issue were consumer credit transactions within section 37-1-201 of the SCCPC.  She contended, given PRA's admission, it was required to send a notice of right to cure before accelerating the debt.

PRA noted that Campney's counterclaims related to false and misleading amounts, referenced differing amounts on the affidavit and itemization and the counterclaims did not reference any letters PRA sent her.  Therefore, it asserted the argument she presented was not properly before the court.  Additionally, PRA contended the amounts in the letters and the amount in the complaint were different because each was under a different theory of recovery; however, PRA only sought to recover under an account stated claim, not a breach of contract claim.

After considering the evidence presented, the circuit court found in favor of PRA and ordered Campney to pay $4,236.78 plus costs to PRA.  It found Andrews testified to the admission of the bill of sale, the load data of account, and credit statements from Synchrony Bank and found he was familiar with Synchrony Bank's billing practices and procedures.  The court determined Campney's account was charged off with an outstanding balance of $4,274.48 and PRA brought the current suit, under an account stated theory of recovery, for $4,236.78.  Further, it stated Andrews testified Campney never disputed the credit statements with Synchrony Bank.

The trial court concluded PRA established the elements of its account stated theory, in that it showed a delinquent account and Campney's implied agreement to the account by making payments and subsequent failure to dispute any charges.  As to Campney's counterclaims, first, the court found Cooling & Winter properly signed the affidavit and verified itemization of account.  Second, as to PRA's failure to send Campney a right to cure notice, the court determined (1) the FDCPA's one-year statute of limitations barred her related counterclaim; (2) her counterclaim under the SCCPC failed on the merits because this was not a "consumer credit transaction" as defined in the SCCPC and therefore the SCCPC was inapplicable; and (3) the right to cure notice provisions of the code did not apply to PRA as an assignee of Synchrony Bank or to Cooling & Winter.  Third, the court found Campney's counterclaim that PRA and Cooling & Winter violated the SCCPC and the FDCPA by misrepresenting the amount owed failed because both amounts were correct under different theories of liability and PRA only pursued the amount under the account stated theory.  Finally, the court also determined Campney's counterclaims related to the South Carolina Unfair Trade

Practices Act (SCUTPA) and negligence per se failed. The court ordered Campney to pay PRA $4,236.78 plus court costs.

Campney filed a motion to alter or amend pursuant to Rules 52 and 59(e) of the South Carolina Rules of Civil Procedure; the court summarily denied Campney's motion. This appeal followed.[5]

## ISSUES ON APPEAL

1. Did the trial court err when ruling Campney was liable to PRA in the amount of $4,236.78, plus costs, under an account stated cause of action?
    a. Is the account stated cause of action applicable to the collection of a consumer credit card debt?
    b. Even if the account stated cause of action applies to this case, did PRA prove all the elements of the cause of action?

2. Did the trial court err when ruling that PRA was not liable to Campney on her counterclaims?
    a. Did the trial court err when ruling the SCCPC did not apply to consumer credit card accounts?
    b. Did the trial court err when ruling Campney's claim that PRA misrepresented the amount owed on the account?

3. Did the trial court err in denying Campney's Rule 52 and 59(e), SCRCP, motion?

## STANDARD OF REVIEW

Whether our courts recognize a certain cause of action is a question of law. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000). When appeals present a novel question of law, appellate courts decide the case de novo. *Burke v. S.C. Dep't of Transp.*, 429 S.C. 319, 321, 838 S.E.2d 534, 535 (Ct. App. 2020). Appellate courts are "free to decide [novel] question of law with no particular deference to the lower court." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 411, 526 S.E.2d 716, 718-19 (2000). Further, "[q]uestions of statutory interpretation are questions of law, which [this court is] free to decide without any deference to the court below." *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011).

---

[5] Cooling & Winter is not a party to this appeal.

**LAW/ANALYSIS**

**1. Campney's Liability to PRA**

    **a. Account Stated Cause of Action**

Campney argues the trial court erred in recognizing an account stated cause of action in a consumer debt collection matter. We disagree.

"[The account stated doctrine] was the rule that accounts stated existed only between merchants. Gradually, the doctrine was extended in many jurisdictions to all classes of business men." *Huggins v. Com. & Sav. Bank*, 141 S.C. 480, 494, 140 S.E. 177, 181 (1927). "This broadening of the doctrine seems to have been recognized in the federal courts and in the courts of the greater number of states in the Union." *Id.* "[An account stated cause of action] was at first confined to accounts between merchants. The trend of modern decisions is to open the doors to persons other than merchants."[6] *Gwathmey v. Burgiss*, 104 S.C. 280, 282, 88 S.E. 816, 817 (1916).

We hold an account stated cause of action is a recognized cause of action in South Carolina against a consumer in a credit card transaction. As our supreme court found in *Gwathmey*, though the account stated cause of action was limited to actions between merchants, the trend of applying the account stated cause of action "is to open the doors to persons other than merchants." *Id.* at 282, 88 S.E. at 817.

---

[6] Other jurisdictions recognize an account stated cause as a proper cause of action to recover an outstanding debt on a consumer credit card account and this jurisprudence is persuasive. *See Leslie Cook v. Midland Funding, LLC*, 208 So. 3d 1153 (Ala. Civ. App. 2016); *Bushnell v. Portfolio Recovery Assocs., LLC*, 255 So. 3d 473 (Fla. Dist. Ct. App. 2018); *CACH, LLC v. Moore*, 133 N.E.3d 661 (Ill. App. Ct. 2019); *Colorado Nat'l. Bank of Denver v. Story*, 862 P.2d 1120 (Mont. 1993); *Citibank (S. Dakota) N.A. v. Poynton*, 723 N.Y.S.2d 327 (App. Term 2000); *Aymett v. Citibank S.D. N.A.*, 397 S.W.3d 876 (Tex. App. 2013). Specifically, the Supreme Court of Oregon recognized that the account stated doctrine, though having "its historical origins in accountings between merchants," "'extended to embrace every kind of transaction in which the relation of debtor or creditor is involved.'" *Portfolio Recovery Assocs., LLC v. Sanders*, 462 P.3d 263, 275 (Or. 2020) (en banc) (quoting *Crawford v. Hutchinson*, 65 P. 84 (Or. 1901)).

Additionally, absent clear language to the contrary and any policy reason to limit the cause of action, we hold the account stated cause of action applies in consumer credit card transactions. Therefore, we conclude the trial court did not err in recognizing that an account stated cause of action is a valid cause of action in a consumer debt collection matter. Accordingly, we affirm as to this issue.

### b. Elements of an Account Stated Cause of Action

Campney argues the trial court erred by finding PRA established the elements of an account stated cause of action. She avers PRA failed to properly present the existence of the delinquent account and failed to show an agreement between her and PRA. We disagree.

"The essential elements of an account stated are (1) that the account is actually stated; and (2) that the parties either expressly or impliedly agreed that it is a true statement and is due to be paid then or at some other specified time." *S. Welding Works, Inc. v. K & S Constr. Co.*, 286 S.C. 158, 164, 332 S.E.2d 102, 106 (Ct. App. 1985). "Evidence of the retention by a depositor of statements or passbook of his bank, after a reasonable time for examination, without notice to the bank of objection thereto, may be given to show an implied admission of an acquiescence in the correctness of the account." *Huggins*, 141 S.C. at 497, 140 S.E. at 182.

We hold the trial court did not err in determining PRA proved the elements of an account stated cause of action. *See S. Welding Works*, 286 S.C. at 164, 332 S.E.2d at 106 ("The essential elements of an account stated are (1) that the account is actually stated; and (2) that the parties either expressly or impliedly agreed that it is a true statement and is due to be paid then or at some other specified time.").

First, the account was presented to Campney because (1) Andrews testified that according to Synchrony Bank's standard procedures, it would have mailed out credit statements to the address on the statement; (2) Campney testified she believed she had received the billing statements from Synchrony Bank; and (3) she admitted she had made prior payments on the account. She also confirmed her address was the same address that was printed on the credit statements admitted into evidence. *See Gwathmey*, 104 S.C. at 282, 88 S.E. at 817 ("Where a creditor sends to his debtor a statement of the account between them and the debtor assents to the balance stated, then the account between them ceases to be an open account and becomes an account stated."). Additionally, Campney did not provide any evidence she objected to the account balance before charge off and sale to PRA.

Second, an agreement existed between PRA and Campney.  Though no express agreement was introduced between PRA and Campney, or Synchrony Bank and Campney, an implied agreement existed as to Synchrony Bank and Campney.  Campney testified she believed she received the credit statements from Synchrony Bank and previously made payments on the account prior to charge off.  Therefore, an implied agreement existed between her and Synchrony Bank.  *See id.* at 282, 88 S.E. at 817 ("Assent might be expressed or implied from the circumstances.  The circumstances were such as a promise to pay the stated balance; long retention of the account without question of the balance and the like.").  As assignee of Synchrony Bank, PRA stood "in the shoes" Synchrony Bank for this purpose and received the benefit of this implied agreement.  *See Bank of Am., N.A. v. Draper*, 405 S.C. 214, 220, 746 S.E.2d 478, 481 (Ct. App. 2013) ("An assignee stands in the shoes of its assignor.").  Accordingly, we hold PRA established all the elements of the account stated cause of action and affirm this issue.

## 2.  PRA and Cooling & Winter's Liability on Campney's Counterclaims

### a.  Applicability of SCCPC

Campney argues the trial court erred by ruling PRA was not liable on her counterclaims related to the SCCPC, the FDCPA, and the SCUTPA and for negligence per se.  First, she asserts the trial court erred by determining the respective statute of limitations barred her counterclaims pursuant to the SCCPC and the FDCPA.  She asserts that even if these counterclaims are time barred, any recovery she was entitled to can be used to set off any debt obligations.  Second, Campney contends the SCCPC and its right to cure notice requirement is applicable in situations regarding consumer credit card accounts.  Finally, she avers the trial court erred in finding PRA did not mispresent the amount owed on the account.  We disagree with two of Campney's contentions: (1) that her FDCPA counterclaim can be used to set off any obligation towards the PRA debt and (2) that the trial court erred in finding PRA did not mispresent the amount owed.  However, we agree that consumer credit card accounts are subject to the SCCPC and PRA was required to send her a right to cure notice before requiring repayment.

The South Carolina Department of Consumer Affairs (the Department) argues in support of Campney.  First, it asserts consumer credit card debt is subject to the SCCPC.  Second, the Department avers PRA was required to provide Campney a right to cure notice before suing for the debt.

The SCCPC defines "creditor" as "the person who grants credit in a credit transaction or, except as otherwise provided, an assignee of a creditor's right to payment, but use of the term does not in itself impose on an assignee any obligation of his assignor." § 37-1-301(13). A "consumer credit transaction" is defined as a "consumer credit sale," "consumer loan," "consumer lease," or "consumer rental-purchase agreement." S.C. Code Ann. § 37-1-301(11) (2015). A "consumer loan" is defined as

> [A] loan made by a person regularly engaged in the business of making loans in which:
>
> > (a) the debtor is a person other than an organization;
> >
> > (b) the debt is incurred primarily for a personal, family, or household purpose;
> >
> > (c) either the debt is payable in installments or a loan finance charge is made; and
> >
> > (d) either the principal does not exceed twenty-five thousand dollars or the debt is secured by an interest in land.

S.C. Code Ann. § 37-3-104 (2015).

A "lender credit card" is defined as:

> [A]n open-end credit arrangement or loan agreement, other than a seller credit card, pursuant to which a lender gives a debtor the privilege of using a credit card, letter of credit, or other credit confirmation or identification in transactions out of which debt arises:
>
> > (a) by the lender's honoring a draft or similar order for payment of money drawn or accepted by the debtor;
> >
> > (b) by the lender's payment or agreement to pay the debtor's obligations; or

                    (c) by the lender's purchase from the obligee
                         of the debtor's obligations.

S.C. Code Ann. § 37-1-301(16) (2015).

Pursuant to the SCCPC, in "a consumer credit transaction payable in two or more installments," a creditor must first provide the consumer a right to cure notice before accelerating the debt after the consumer's default. *See* S.C. Code Ann. § 37-5-110(1) (2015). Section 37-5-110(2) of the South Carolina Code (2015) states that a right to cure notice must

> be in writing and conspicuously state: the name, address and telephone number of the creditor to whom payment is to be made, a brief identification of the credit transaction, the consumer's right to cure the default, and the amount of payment and date by which payment must be made to cure the default.

We hold the trial court erred by determining the SCCPC did not apply to the credit transactions in this case. We find PRA was required to send Campney a right to cure notice before accelerating the amount due and filing a lawsuit.

We hold consumer credit cards are "lender credit cards" and "consumer loans" pursuant to the SCCPC. *See* S.C. Code Ann. § 37-1-301 (2015) (defining "lender credit card" under the SCCPC); § 37-3-104 (defining "consumer loans" under the SCCPC). Here, Campney is a "person other than an organization"; no party disputed that the debt was incurred "primarily for a personal, family, or household purpose"; the credit statements state the "loan finance charge" annual percentage rate was 29.99%; and the total principal amount owed on Campney's account did not exceed the maximum dollar amount for a consumer loan.[7] *See* § 37-3-104. Because we hold the credit transactions are consumer loans and therefore,

---

[7] As the Department notes in its amicus brief, while section 37-3-104(d) states the principal amount in a consumer loan "does not exceed twenty-five thousand dollars," this amount is adjusted based upon changes in the Consumer Price Index. *See* S.C. Code Ann. § 37-1-109 (2015). The Department provides the relevant maximum amount was $105,000. *See* South Carolina Department of Consumer Affairs, *Dollar Amount Adjustment*, https://consumer.sc.gov/business-resourceslaws/dollar-amount-adjustment (last accessed June 2, 2023).

consumer credit transactions under the SCCPC, we find the trial court erred in determining PRA was not required to send a right to cure notice before suing for the debt.

We find PRA's argument that the requirement to issue a notice of right to cure before suing Campney disappeared when PRA bought the debt from Synchrony Bank is without merit. We determine PRA's argument that it is not a creditor as defined in section 37-1-301(13) is an improper reading of the statute. *See* § 37-1-301(13) (defining creditor as "the person who grants credit in a credit transaction or, except as otherwise provided, an assignee of a creditor's right to payment, but use of the term does not in itself impose on an assignee any obligation of his assignor"); *Duke Energy Corp. v. S.C. Dep't of Revenue*, 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016) ("[R]egardless of how plain the ordinary meaning of the words in a statute, courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not have been intended by the General Assembly."); *id.* ("If possible, the [c]ourt will construe a statute so as to escape the absurdity and carry the intention into effect."). Particularly, no creditor, initial or assignee, would be held liable for violation of the SCCPC's right to cure notice requirement whenever a charged off debt was assigned because an initial creditor would argue it would have no obligation once all their claims to a debtor's account were assigned and an assignee would raise the argument PRA raises. Additionally, such a scenario would frustrate the General Assembly's intent and purpose in enacting the SCCPC. *See* § 37-1-102(1) to (2) (setting forth the policies of the SCCPC); § 37-1-102(1) (stating the SCCPC must be "liberally construed and applied to promote its underlying purposes and policies"). Therefore, we conclude the trial court erred in finding PRA was not required to send a right to cure notice prior to accelerating the debt and reverse the trial court's determination for PRA on Campney's counterclaim regarding the SCCPC's right to cure notice.[8]

Though the statute of limitations for Campney's SCCPC counterclaim is two years, the SCCPC allows for an aggrieved individual's debt obligations to be set off by any "refunds or penalties" she may be entitled, regardless of "time limitations." *See* S.C. Code Ann. § 37-5-202(1) (2015) ("With respect to violations arising from sales or loans made pursuant to a revolving charge or a revolving loan account no action pursuant to this subsection may be brought more than two years after the violation occurred."); *see also* S.C. Code Ann. § 37-5-205 (2015) ("Refunds or penalties to which the debtor is entitled pursuant to this part may be set off against

---

[8] Additionally, we note PRA admitted in its response to Campney's first requests that the transaction at issue was a "consumer credit transaction."

the debtor's obligation, and may be raised as a defense to a suit on the obligation without regard to the time limitations prescribed by this subdivision."). Therefore, pursuant to her SCCPC counterclaim, Campney may be entitled to a set off of amounts she owed PRA and we remand this counterclaim to the trial court. However, we find the trial court properly found for PRA on Campney's FDCPA claims because they were time-barred and not subject to any set off provision. *See* 15 U.S.C. § 1692k(d) (2021) (requiring that any action seeking to enforce a claim pursuant to the FDCPA must be brought "within one year from the date on which the violation occurs"). Accordingly, we reverse the trial court's determination in favor of PRA on the dismissal of Campney's counterclaim related to the SCCPC's right to cure notification and remand to allow the trial court to determine the amount of set-off and attorney's fees, if any, Campney is entitled. We affirm the trial court's determination in favor of PRA on the dismissal of her counterclaims related to the FDCPA, the SCUTPA, and negligence per se.

### b. Amount Owed

We hold the trial court did not err in finding PRA did not misrepresent the amount owed. As to this issue, we find Campney's claims are without merit. We conclude the trial court properly determined that both amounts were correct on different theories of recovery and PRA only sought to recover under the account stated theory. Accordingly, the trial court did not err in finding PRA did not misrepresent the amount owed, and we affirm this issue.

### 3. Rule 52 and 59(e), SCRCP Motion

Given our disposition of the prior issues, we do not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (observing an appellate court need not address remaining issues when the determination of a prior issue is dispositive).

**CONCLUSION**

Based on the foregoing, the trial court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS and VINSON, JJ., concur.**